UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Walker*, 7:20cv81490 | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56. ECF No. 12. Having fully considered the parties' arguments and applicable Kentucky law,[1] the Court concludes that Defendant's motion should be denied.

Summary judgment is appropriate where there are no genuine disputes of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[1] The parties agree Kentucky law applies to Walker's claims. *See* ECF No. 11. Additionally, the Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

Walker has brought fifteen claims against Defendant under Kentucky law arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *See* Master Short Form Compl., ECF No. 1.[2] Defendant moves for summary judgment on several grounds including arguments that: (a) each of Walker's claims are barred by the applicable statute of limitations; (b) each of Walker's claims fail as a matter of law due to insufficient specific causation evidence; (c) Walker's design defect claims fail as a matter of law because Walker's experts did not identify a safer alternative design; (d) Walker's fraud-based claims fail as a matter of law due to insufficient reliance evidence; (e)

---

[2] Specifically, Walker raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI). ECF No. 1 at 4. Additionally, Walker previously asserted a claim for Loss of Consortium (Count XIV), but Walker indicated at his deposition he is no longer pursuing that claim. ECF No. 12-1 at 4-5.

Walker's fraudulent concealment claim fails as a matter of law because Defendant had no duty to disclose known defects; (f) Walker's punitive damages claim fails as a matter of law because his underlying substantive claims should be dismissed; and (g) Walker's breach of express warranty, breach of implied warranty, negligence *per se*, breach of consumer protection laws under the Kentucky Consumer Protection Act, and unjust enrichment claims fail as a matter of law under various theories. ECF No. 12. In response, Walker withdrew his claims for breach of express and implied warranties, negligence *per se*, breach of consumer protection laws under the Kentucky Consumer Protection Act, and unjust enrichment. ECF No. 16. The Court will address the remaining issues below.

## I.    Statute of Limitations

The Court rejects Defendant's statute of limitations argument. Walker's personal injury claims are subject to a one-year statute of limitations period, KRS § 413.140(1)(a), and his fraud claims are subject to a five-year limitations period. KRS § 413.120(11). Based on the parties' tolling agreement, Walker filed his claims on June 20, 2019. ECF No. 16 at 4. Thus, his personal injury claims are timely if they accrued after June 20, 2018, and his fraud claims are timely if they accrued after June 20, 2014.

Under Kentucky law, as a general rule, a personal injury claim accrues "on the date of an injury even if a plaintiff is not made aware of the extent" of the injury

until later. *Ashbrook v. Ethicon, Inc.*, 514 F. Supp 3d 971, 975 (E.D. Ky. 2021) (citing *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002)); *see also Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972). However, Kentucky courts have recognized the discovery rule for cases involving latent injuries under which a cause of action will not accrue "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979); *see also Hackworth v. Hart*, 474 S.W.2d 377, 379 (Ky. App. 1971) (refining the discovery rule first enunciated by the Kentucky Supreme Court in *Tomlinson v. Siehl*, 459 S.W.2d 166 (Ky. 1970)); *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 56 (Ky. 2010) (limiting the application of the discovery rule to latent injury, latent illness, and related medical malpractice cases). The application of the discovery rule is a question of law, whereas the question of when the plaintiff discovered or should have discovered the injury and its cause is a question of fact for the jury. *Cutter v. Ethicon*, 2021 WL 3754245, at *4-8 (6th Cir. Aug. 25, 2021) (citing *Elam v. Menzies*, 594 F.3d 463, 467 (6th Cir. 2010)); *see also Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 737 (Ky. 2000) (explaining that under the discovery rule "a cause of action accrues when a plaintiff knows or, in the exercise of reasonable diligence, should know of both the injury and its cause" and deciding there was a fact question

Case No. 7:20cv81490-MCR-HTC

as to when the plaintiff knew or should have known his injuries were caused by an occupational chemical exposure) (citations omitted).

An injury is "latent" and the discovery rule applies when "the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence." *Cutter*, 2021 WL 3754245, at *3 (quoting *Fluke*, 306 S.W.3d at 60) (internal quotation marks omitted). As the Court previously explained in *Sloan v. 3M Co.*, a plaintiff's auditory injuries may be considered latent under Kentucky law if the plaintiff would not have uncovered the cause of his injuries even with the exercise of due diligence. *See Sloan v. 3M Co.*, Case No. 7:20cv001, ECF No. 96 at 6-7 (N.D. Fla Dec. 15, 2021) (applying Kentucky law); *see also Hacker v. 3M Co.*, Case No. 7:20cv131, ECF No. 194, at 3-4 (N.D. Fla. Apr. 28, 2021); *Stelling v 3M Co*, Case No. 7:20cv143, ECF No. 107, at 6-7 (N.D. Fla. Dec. 4, 2021).

Walker's injuries were not caused by one acute event that would have put him on notice of his auditory injuries or the CAEv2's defects. *See e.g.*, Dr. Craig Hecht's Expert Report, ECF No. 16-2 at 10 (noting Walker experienced noise exposure including kitchen noise and episodic fire while on active duty from Feb. 2007-Feb. 2015); *id.* at 7 (Dr. Hecht determining Walker's auditory injuries were caused by his use of the CAEv2 while exposed to noise); *see also* Walker Depo. ECF No. 15-4 at 45-46 (indicating he first noticed his tinnitus during his service with the Reserves

starting in 2015). As Dr. Hecht explained in his expert report, there are numerous causes of auditory injuries. *See* ECF No. 16-2 at 11 (outlining several potential alternate causes considered). Additionally, nothing put Walker on notice that his hearing injuries were caused by the CAEv2's alleged defects, *see* ECF No. 15-4 at 39-40 (Walker indicating he never noticed the CAEv2 was not providing adequate protection), particularly given that one of the alleged defects included *imperceptible* loosening. *See* Richard McKinley Expert Report, ECF No. 16-5 at 7 (stating opinions on defective design issues); *see also Sloan v. 3M Co.*, Case No. 7:20cv001, ECF No. 96 at 6-7 (N.D. Fla Dec. 15, 2021). Furthermore, the relevant information detailing the CAEv2's defects was not even made public until July 2018. Therefore, a reasonable jury could conclude that Walker could not have reasonably discovered that the CAEv2 was the cause of his auditory injuries prior to July 2018.

Since Walker's injuries are latent, the discovery rule applies as a matter of law, *see Cutter*, 2021 WL 3754245, at *3 (quoting *Fluke*, 306 S.W.3d at 60), and the question of when Walker knew or should have known through the exercise of due diligence that his injuries were caused by the CAEv2 is for the jury. *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 503 (Ky. 2014) (citing *R.T. Vanderbilt v. Franklin*, 290 S.W. 3d 654, 659 (Ky. App. 2009)); *Lipsteuer*, 37 S.W. 3d at 737.

## II. Specific Causation

Defendant additionally moves for summary judgment on all of Walker's claims arguing, parallel to its *Daubert* motion, that Walker's expert witness does not reliably attribute Walker's injuries to his use of the CAEv2. ECF No. 12 at 9-11. These arguments fail for the reasons set forth in the Court's Order denying Defendant's *Daubert* motion on this same issue. ECF No. 19.

## III. Safer Alternative Design

Defendant moves for summary judgment on Walker's design defect claims arguing that those claims fail as a matter of law because Walker has not proffered expert testimony regarding a safer alternative design. ECF No. 12 at 13. The Court disagrees.

Under Kentucky law, a plaintiff must establish the existence of an alternative, safer design that is practical under the relevant circumstances to recover for a design defect. *Primal Vantage Co. v. O'Bryan*, --- S.W.3d ---, 2022 WL 3641122, at *12 (Ky. 2022). Expert testimony is required when a proper understanding cannot be established through ordinary knowledge but instead requires scientific or specialized knowledge. *Garvin v. Ethicon*, 616 F. Supp. 3d 658, 670 (W.D. Ky 2022) (citing *Commonwealth v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967)).

Defendant's argument is premised on a statement of Walker's expert, Dr. Craig Hecht, that the issue of a safer alternative design is beyond his expertise. ECF

No. 12 at 13. However, Dr. Hecht has opined there were alternative products, specifically referencing the SureFire Sonic Defender and the Moldex Battle Plug, that are in his view were "more effective" and would have "provide[d] better protection" than the CAEv2, ECF No. 16-1 at 99-100, and the Court has previously ruled that Dr. Hecht is qualified to offer this opinion at trial but only from a clinical perspective: i.e. based on his experience in seeing patients with hearing-related problems and recommending ear plugs. ECF No. 19 at 2. More importantly, Walker has proffered several additional experts that have provided opinions on safer alternative designs on which Dr. Hecht specifically relied in forming his opinion. ECF No. 16-2 at 8 (Dr. Hecht noting he relied on the opinions of the general causation experts to "find there were safer alternative hearing protective devices that could have significantly reduced or prevented plaintiff's hearing damage and related injuries); *see also* ECF No. 16-3 at 1-4 (Walker's Rule 26 expert witness disclosures listing for example Dr. Mark Packer and Richard McKinley as general experts); ECF No. 16-4 at 13-15 (Dr. Packer discussing safer alternative for both linear and nonlinear hearing protection); ECF No. 16-5 at 91-111 (Richard McKinley providing analysis on safer alternative designs and alternative products).[3] This issue will be decided by a jury.

---

[3] Notably, Defendant only filed an objection in this case to exclude the expert testimony and opinions of Walker's specific causation expert, ECF No. 13.

Case No. 7:20cv81490-MCR-HTC

## IV.     Reliance Evidence

Defendant moves for summary judgment on Walker's fraud-based claims, specifically his claims for negligent and fraudulent misrepresentation and fraud and deceit, arguing that Walker has not identified any false representations on which the military or he personally relied. ECF No. 12 at 14. The Court disagrees because this exact issue has already been addressed under Kentucky law in separate 3M cases. *See Hacker v. 3M Co.*, Case No. 7:20cv131, ECF No. 194, at 4 (N.D. Fla. Apr. 28, 2021); *Montero v. 3M Co.*, Case No. 7:20cv067, ECF No. 93 at 3-4 (N.D. Fla. Nov. 29, 2021); *Stelling v. 3M Co.*, Case No. 7:20cv143, ECF No. 107 at 8-9 (N.D. Fla. Dec. 4, 2021); *Sloan v. 3M Co.*, Case No. 7:20cv001, ECF No. 96 at 8-9 (N.D. Fla. Dec. 15, 2021). Defendant's representations to the United States military are the same as made in this case, and Walker's statements make clear that he relied on the military's directives to protect his hearing. ECF No. 15-4 at 59, 64-65 (Walker indicating at his deposition that he used the "yellow and green" earplugs for firing weapons and that he was required to take earplugs on deployment with the CAEv2 as one of only two options offered by the military); *see also* P-GEN-82 (marketing material promising hearing protection against impulse noises including weapons fire); P-GEN-766 ("Operation Cobra" marketing plan outlining plans to advertise the product through trade publications and newsletters, e.g. Army Magazine and

Stars and Stripes newspaper, that could be seen directly by soldiers).  Again, this issue will be decided by a jury.

### V. Duty to Disclose

Defendant moves for summary judgment on Walker's fraudulent concealment claim arguing that it did not owe the military a duty to disclose known defects or alternatively that even if a duty was owed there is insufficient proof the military would not have purchased the CAEv2 if the alleged defects were disclosed. ECF No. 12 at 15. Again, the Court disagrees.

Under Kentucky law, a duty to disclose information is the central element of a fraudulent concealment claim. *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (explaining that a fraudulent concealment claim "is grounded in a duty to disclose") (citing *Republic Bank & Trust Co. v. Bear, Stearns, & Co., Inc.*, 707 F. Supp. 2d 702, 710 (W.D. Ky. 2010)). "The existence of a duty to disclose is a matter of law for the court." *Id.* (citing *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. App. 1998)). A duty to disclose may arise in four situations: 1) when there is a fiduciary relationship, 2) when there is a statutory requirement, 3) when a defendant has partially disclosed material facts that create the impression of full disclosure, and 4) where one contracting party has superior knowledge. *Morris Aviation, LLC v. Diamond Aircraft Industries, Inc.*, 536 F. App's 558, 568 (6th Cir. 2013) (citing *Giddings*, 348 S.W.3d at 747-48).

Case No. 7:20cv81490-MCR-HTC

In *Hacker, Montero*, *Stelling*, and *Sloan* the Court concluded that the Defendant's partial disclosures to the United States military created a duty to disclose complete information about the CAEv2 to soldiers under Kentucky law. *Hacker v. 3M Co.*, Case No. 7:20cv131, ECF No. 194 at 6 (N.D. Fla. Apr. 28, 2021) (citing *Morris Aviation*, 536 F. A'ppx at 568); *Montero v. 3M Co.*, Case No. 7:20cv067, ECF No. 93 at 5-6 (N.D. Fla. Nov. 29, 2021); *Stelling v. 3M Co.*, Case No. 7:20cv143, ECF No. 107 at 11 (N.D. Fla. Dec. 4, 2021); *Sloan v. 3M Co.*, Case No. 7:20cv001, ECF No. 96 at 10-11 (N.D. Fla. Dec. 15, 2021). The same is true here, where the Defendant made partial disclosures to the military regarding the safety of the CAEv2 yet failed to disclose known problems with the plug, and the military relied on those disclosures when issuing the CAEv2 to soldiers. *See e.g.*, P-GEN-1 ("Flange Memo" detailing fitting and variability issues with the CAEv2 indicating modified fitting procedures were used to obtain the advertised NRR of 22); P-GEN-1013 (marketing material explaining that the CAEv2 will protect soldiers' hearing from impulse noise such as weapons fire and explosives); P-GEN-122 (email exchange explaining that the CAEv2 "will not reduce 190 db explosions to a safe level" and that "the CAE is not the optimal choice for the gun range"); P-GEN-9 (Army memorandum summarizing False Claims Act investigation stating "[i]nterviews of US Government personnel confirmed that had they known about the February 2000 test results . . . on the CAE they may not have purchased the

items"). The Court's decision is supported by the decisions of other courts applying Kentucky law. *See Morris Aviation*, 536 F. App'x at 569 (determining that a duty to disclose can arise when the parties never contracted with one another because Kentucky courts treat partial disclosures and affirmative fraud similarly); *Mitchell v. General Motors LLC*, Case No. 3:13cv498, 2014 WL 1319519, at *13 (W.D. Ky. Mar. 31, 2014) (determining that a manufacturer's partial disclosure that a defective product is "safe and reliable" is sufficient to create a duty to disclose the defects to purchasers who received the defective product from third parties).

Accordingly, Defendant's Motion for Summary Judgment, ECF No. 14, is **DENIED.**[4]

**SO ORDERED**, on this 17th day of June 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[4] Given the Court's ruling on the other matters, Defendant's motion for summary judgment on Walker's punitive damages claim is denied.

Case No. 7:20cv81490-MCR-HTC